UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
**PEARL ROBINSON,**

                              **Plaintiff,**

    - against -

**CITIBANK, South Dakota, N.A.,**

                              **Defendant.**
-------------------------------------------------------------x

**MEMORANDUM AND ORDER**

**06 CV 5701 (NG) (LB)**

**GERSHON, United States District Judge:**

*Pro se* plaintiff Pearl Robinson brings this action against defendant Citibank, South Dakota, N.A. ("Citibank"),[1] and alleges that she suffered financial and emotional injuries as a result of defendant's false allegations against her regarding certain disputed transactions charged to her credit card account. Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking: (1) dismissal of all of plaintiff's claims against it; and (2) an order granting its counterclaim against plaintiff for an outstanding balance owed to the company.

## FACTS

Unless otherwise indicated, the following facts are undisputed.

In June 1996, plaintiff Robinson opened a credit card account with Sears MasterCard. In November 2003, defendant Citibank purchased the account and became its issuer and administrator. At all times, plaintiff's use of the account was subject to the terms of a Card Agreement that was amended from time to time.

---

[1] On or about September 21, 2006, plaintiff commenced this action in the Supreme Court of the State of New York, Queens County, against Citibank, erroneously named as "Sears/Citicards Citibank," seeking $500,000.00 in damages. On October 20, 2006, Citibank removed this action to federal court on the basis of diversity jurisdiction.

On March 26, 2005, plaintiff checked into the Holiday Inn in Deland, Florida. She stayed one night at the hotel and used her Sears MasterCard on March 27, 2005 to pay the $66.38 bill for her stay. The next day, on March 28, 2005, defendant posted the transaction onto plaintiff's account statement, charging her for that exact amount (the "March 28 transaction").

In late April 2005 or early May 2005, plaintiff received a billing statement dated April 20, 2005, indicating a total outstanding balance of $866.05. In addition to other purchases made by plaintiff, that balance included the March 28 transaction as well as another transaction at the same Holiday Inn in the amount of $132.76, charged by the Holiday Inn on March 28, 2005 and posted by defendant on March 29, 2008 (the "March 29 transaction"). Plaintiff thereafter contacted Citibank's customer service department regarding the error, but for reasons that are not in the record, disputed only $66.36 of the $132.76 charged to her account for the March 29 transaction rather than the entire amount.[2]

By letter dated May 17, 2005, defendant responded to plaintiff's dispute inquiry regarding the transaction, stating in part:

> You can assist me with this investigation for $66.36 by promptly reviewing, completing, and returning this information to my attention. If I have not received your valuable response within 10 days of your receipt of this letter, I will assume the charge is correct and rebill your account.
>
> The first important step to resolving this matter is for you to contact the merchant to determine the reason for the difference in the amount billed to your account and to request a credit slip.

---

[2] Plaintiff provides no explanation as to why she disputed only $66.36 of the $132.76 charge when, it is now undisputed, the total sum was charged in error. Putting aside the $0.02 discrepancy in the amount disputed, which appears to have been inadvertent error on plaintiff's part, the record indicates that the $132.76 charge represented an additional charge to the $66.38 already, and correctly, charged to plaintiff's account for her March 26-27, 2005 stay.

2

The letter further requests that plaintiff "check and complete" the bottom half of the letter, which asks plaintiff to provide more specific information about the errant charge and for appropriate documentation to help process the dispute inquiry.[3]  On the same date as the letter, defendant also posted to plaintiff's account a conditional credit in the amount of $66.36.  That amount, along with a payment made by plaintiff on May 18, 2005 in the amount of $733.29 for other purchases, was credited against plaintiff's previous balance of $866.05, resulting in a new balance of $66.40, as of the May 20, 2005 billing statement.  Plaintiff's payment of $733.29 reflects the total amount that she would have owed to defendant if the $132.76 charge had not been mistakenly posted to her account.

Plaintiff's next billing statement, dated June 20, 2005, reflected further activity on her account with respect to the March 28 and 29 transactions.  On May 20, 2005, plaintiff received a credit from the Holiday Inn in the amount of $132.76, an amount equal to and representing the March 29 transaction charged in error.  Defendant applied the credit in full against plaintiff's outstanding balance.  Then, on May 25, 2005, defendant posted a "Credit Balance Refund," charging plaintiff's account in the amount of $66.36.[4]  Finally, on June 16, 2005, because of plaintiff's failure to respond to defendant's inquiries regarding her partial dispute of the March 29 transaction, defendant reversed the conditional credit of $66.36 originally issued on May 17, 2005 and charged the full amount back onto plaintiff's account.  These charges and credits, plus

---

[3] There is no evidence that the letter, a copy of which is attached by plaintiff as part of her Amended Complaint, was actually sent back to defendant as requested.  However, even assuming that the letter was returned, neither the contents nor plaintiff's handwritten notes on the letter contradict any of the facts presented here.  Rather, the letter confirms that plaintiff disputed $66.36 of the March 29 transaction and that she eventually received credit from the merchant.

[4] Neither party adequately explains what this transaction represents.  Defendant mentions the transaction in its brief, indicating that the $66.36 was applied as a credit to plaintiff's account.  However, even though the transaction description also suggests that the amount was a credit, the billing statement clearly indicates that the amount was charged, not credited, to plaintiff's account.

3

other purchases made by plaintiff, reflected an outstanding balance of $91.12 as of this statement.

Also during this billing period, though not reflected on the billing statement, plaintiff received from defendant a check dated May 26, 2005 in the amount of $66.36. The front of the check included a printed note stating, "REFUND ON SEARS ACCOUNT # XXX-XXX-XXX-8532." The check was signed by plaintiff and deposited on or about June 13, 2005.

On June 24, 2005, plaintiff placed a new dispute with defendant's customer service department, this time challenging the March 28 transaction as an erroneous charge to her account. In response, defendant issued to plaintiff a conditional credit in the amount of $66.37 that same day[5] and applied the full amount, along with a payment by plaintiff in the amount of $24.76, against her preexisting balance of $91.12. Plaintiff's billing statement dated July 20, 2005 accordingly reflected a negative balance of $0.01.

On July 27, 2005, defendant reversed the conditional credit of $66.37 issued to plaintiff during the prior month because of plaintiff's failure to respond to defendant's inquiries regarding the disputed March 28 transaction. Because plaintiff made no other purchases or payments to her account during this billing period, her billing statement dated August 20, 2005 reflected an outstanding balance of $66.36, or the full amount of the credit charged back onto plaintiff's account, less the $0.01 credit from her previous balance.

After receiving the August 20, 2005 billing statement, plaintiff made no further payments to her account, except on one occasion to pay off charges unrelated to the March 28 and March 29 transactions. As a result, plaintiff incurred monthly late payment fees and finance charges on her outstanding balance of $66.36 from September 20, 2005 to May 23, 2006, when plaintiff's

---

[5] Neither defendant nor plaintiff provide an explanation as to why the conditional credit was issued for $0.01 less than the disputed amount.

4

account was finally charged off for nonpayment. As of May 23, 2006, plaintiff's account held an outstanding balance of $489.31.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the facts in the light most favorable to the non-moving party, and all reasonable inferences and ambiguities must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Flanagan v. GE*, 242 F.3d 78, 83 (2d Cir. 2001). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), but "must come forward with specific facts showing that there is a genuine issue for trial," *Matsushita*, 475 U.S. at 586-8 (emphasis removed).

### II. Plaintiff's Claims

Defendant moves for summary judgment, seeking to dismiss all of plaintiff's claims against it, on the grounds that plaintiff has not identified any cognizable claims against it, and that, irrespective of whatever claims are at issue, plaintiff cannot establish how defendant's unidentified actions caused her to incur her alleged damages.

In her Amended Complaint, plaintiff makes the following allegations and requests monetary damages arising out of those allegations:

> Sears credit card had been used for one night reservation at the Intercontinetal Hotels Group. Reservation book, March 26, 2005, for one night, charged $66.37. Plaintiff . . . was charged for two nights . . . . Plaintiff had paid $66.38 on the Sears credit card. . . [but] continuation, plaintiff had been harassed willfuly [sic] by Sears/Citicards, for payments of the hotel reservation. The ringing of plaintiff's phone from 8:30 a.m. to 7:30 p.m., to hear harshed [sic] words from customer service. . . . This accusation, accumulates in damaging plaintiff's credit scores. Immediately, applications for loans were denied on several occasions. Due to negligence of Sears, and Citicard/Citibank, plaintiff was deprived of buying a home. The rates on plaintiff's credit cards went beyond [sic] her financial means. It injured her capabilities transferring money to zero interest rate. Because, low interest rates, and zero rates were cancelled. That caused plaintiff anxiety of painful confusion. . . . Plaintiff had excellent credit scores that gains financial status. . . .
>
> I asked this court to take into consideration, the willful act of exploitation to accumulate finance. That develope [sic] the damaging, and crippling of plaintiff's opportunity. In receiving a bank loan, and other loans to fulfill her standard of living. The process of purchasing a house to relocate. Amount demanded, value of the home in 2005. Claiming, (five hundred thousand). Include, harassment, stressful pain of suffering agravation [sic], and other relief the court finds just and proper.

Defendant correctly notes that plaintiff has failed to specifically identify the legal claims she is asserting against it, but to the extent the Amended Complaint can be construed as asserting cognizable claims, plaintiff's allegations fall into one of two categories. First, plaintiff claims either negligent and/or intentional wrongdoing on the part of defendant with respect to its management of her account. Second, plaintiff claims that defendant negligently and/or intentionally inflicted emotional distress with respect to the manner in which it sought payment from plaintiff.

As to plaintiff's first category of claims, the heart of these allegations is that defendant posted inaccurate charges, credits, and payments with respect to the March 28 and March 29

transactions and that, as a result, plaintiff suffered the financial injuries for which she seeks monetary redress. Thus, irrespective of the specific claim plaintiff may be asserting, plaintiff can recover damages only if she can establish that defendant engaged in some wrongful conduct that caused her injuries.

Here, the record evidence establishes that defendant did not engage in any wrongdoing with respect to the amount it charged or credited plaintiff for the disputed March 28 and March 29 transactions, and that any conduct on its part could not have caused the damages alleged by plaintiff. Although there are various transactions muddying the factual landscape, it is undisputed that: (1) the March 28 transaction reflected an accurate charge by the Holiday Inn in the amount of $66.38; and (2) the March 29 transaction reflected an inaccurate charge by the Holiday Inn in the amount of $132.76. Because plaintiff was erroneously charged for both transactions on her billing statement, dated April 20, 2005, it is further undisputed that plaintiff owed only $66.38 for her stay at the Holiday Inn. The record makes clear that, on May 18, 2005, plaintiff properly paid that amount as part of her total payment of $733.29 to her account; the payment of $733.29 reflected an amount equal to her previous balance of $866.05 minus the $132.76 that was mistakenly charged to her account. The record also makes clear that plaintiff eventually received proper credit for the mistaken March 29 transaction. On May 23, 2005, the Holiday Inn credited plaintiff's account in the amount of $132.76, and defendant applied that credit to her outstanding balance during that billing period.

These basic facts are not contradicted by the various intervening charges and credits that appeared on plaintiff's account. First, the record establishes that the conditional credit of $66.37 that defendant issued to plaintiff on May 17, 2005, in response to her partial dispute of the March 29 transaction, did not improperly add any additional charges to plaintiff's account. In fact, when

7

the conditional credit was initially applied against plaintiff's outstanding balance at the time, that amount actually represented a windfall of $66.36 from the defendant since plaintiff received a full credit of $132.76 from the Holiday Inn. Thus, when defendant reversed the conditional credit on June 16, 2005, the $66.36 charged back to her account was not an additional charge to plaintiff. Rather, since plaintiff had already paid for the March 28 transaction and had received a full credit for the March 29 transaction by this time, the reversal of the conditional credit essentially placed plaintiff in the same financial position she would have occupied had she not erroneously disputed part of the March 29 transaction.

Similarly, the record establishes that the "credit balance refund" transaction, charging plaintiff's account in the amount of $66.36 on May 25, 2005, did not alter the amount plaintiff owed with respect to the March 28 and March 29 transactions because she received from defendant a refund check for that very amount. Although neither party adequately explains why the "credit balance refund" transaction appears on plaintiff's billing statement or whether the check was actually issued to correct the unexplained charge, the absence of an explanation does not create a genuine issue of material fact as to whether defendant improperly demanded payment for a balance plaintiff did not owe on the March 28 and March 29 transactions. Because the May 25, 2005 charge and subsequent refund check effectively canceled each other out, the amount owed by plaintiff with respect to the March 28 and March 29 transactions was ultimately unaffected.

The record further establishes that the balance outstanding on plaintiff's account is the result of an unresolved dispute inquiry initiated by plaintiff on June 24, 2005 with respect to the March 28 transaction, a transaction that plaintiff admits was properly charged and posted to her account for her one-night stay at the Holiday Inn. Defendant provided a conditional credit in the

8

amount of $66.37 to plaintiff's account, which it applied in full to her balance outstanding at that time.  On July 27, 2005, defendant reversed the credit because plaintiff failed to respond to its inquiries regarding the disputed amount and properly charged $66.37 back to her account.  Because plaintiff thereafter refused to pay the resulting balance of $66.36, she incurred late payment fees and finance charges totaling $489.31 by May 23, 2006, at which point defendant charged off her account for nonpayment.

Thus, it is clear from the record that, as of June 16, 2005, plaintiff had paid the proper amount and defendant had issued the proper credit for the March 28 and March 29 transactions.  It is further established from the evidence that the balance that currently exists on plaintiff's account is the result of plaintiff failing to respond to defendant's inquiries about the March 28 transaction dispute and her subsequent refusal to pay the balance owing on her account.  Plaintiff therefore cannot claim that defendant launched any "false allegations" against her or improperly demanded payment from her for charges for which she was not responsible.  That is, she cannot demonstrate any wrongful conduct on the part of Citibank or establish that defendant's actions caused her to incur her alleged damages.  Indeed, plaintiff offers no evidence at all to rebut defendant's showing that there are no genuine issues of material fact here, and, on summary judgment, plaintiff's bare allegations cannot state or support any cognizable claim against defendant.  *See Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").  Because no reasonable jury could conclude otherwise, defendant's motion for summary judgment dismissing plaintiff's first category of claims is granted.

9

Contrary to defendant's suggestion, that plaintiff's account was properly charged does not necessarily resolve the second category of claims concerning the type of conduct defendant allegedly engaged in to secure payment from plaintiff on her outstanding balance. However, plaintiff's claims fail because she does not produce any evidence in support of this category of claims against defendant. The only basis for her claims remains the allegations asserted in the Amended Complaint, but neither "unsupported allegations" nor "[m]ere conclusory allegations" suffice to establish that there is a genuine issue for trial. *See Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). Because plaintiff has failed to satisfy her burden to "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 256, defendant is granted summary judgment as to plaintiff's second category of claims.

### III. Defendant's Counterclaim

Defendant moves for summary judgment with respect to its counterclaim for account stated and seeks damages in the amount of $489.31, the amount outstanding on plaintiff's account, and for attorney's fees.

An account stated is "an agreement, express or implied, that a statement of account has been asserted, and has been accepted as correct; both parties must express assent to the account as correct; assent may be inferred by silence when an account rendered remains unquestioned a reasonable time after receipt." *Daewoo Int'l (America) Corp. Creditor Trust v. SSTS America Corp.*, 2004 WL 830079, at *6 (S.D.N.Y. 2004). Thus, an essential element of a claim for account stated—as opposed to a claim for breach of contract—is express or implied assent to the balance. *Id.*; N.Y. Jur. 2d Accounts § 26 ("It is not the original obligation, created when the items of indebtedness arose, that provides the basis of a cause of action on an account; rather, it

is the agreement of the parties made subsequent to the transactions constituting the account that a certain balance remains due from one to the other, and a promise of the party found to be indebted to pay to the other the sum so ascertained, that gives rise to such an action."); *see id.* §§ 15, 17, 20, 31. In this case, given plaintiff's June 24, 2005 challenge of the March 28 transaction charge, and all of the attendant circumstances surrounding plaintiff's account, the necessary assent was neither expressed nor can it be implied. Summary judgment is therefore granted to plaintiff on defendant's counterclaim.

## CONCLUSION

For the reasons discussed above, defendant's motion for summary judgment on plaintiff's claims is granted. Defendant's motion for summary judgment on its counterclaim for account stated is denied, and plaintiff is granted summary judgment on the counterclaim. The Clerk of Court is directed to enter judgment accordingly and to close the case.

**SO ORDERED.**

_____/s_____
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
July 29, 2008